**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PERRY MORGAN, ) | CASE NO. 1:12-CV-869 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|    Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Perry Morgan ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On September 8, 2008, Plaintiff filed his application for SSI and alleged a disability onset date of April 22, 2000. (Transcript ("Tr.") 11.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On May 20, 2011, an ALJ held Plaintiff's hearing. (*Id*.) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id*.) A vocational expert ("VE") also participated and testified. (*Id*) On July 1, 2011, the

ALJ found Plaintiff not disabled.  (Tr. 20.)  On March 7, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On April 11, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On September 6, 2012, Plaintiff filed his Brief on the Merits.  (Doc. No. 17.)  On October 22, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 18.)  Plaintiff did not file a Reply Brief.

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) failed to account for his antisocial personality disorder in formulating his residual functional capacity ("RFC"); and (2) propounded a hypothetical to the VE that did not accurately describe Plaintiff's limitations.  The Commissioner argues that the ALJ's conclusions are supported by substantial evidence in the record.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born on December 30, 1962, and was 45 years old when he filed his SSI application.  (Tr. 18.)  He attended school through the eleventh grade, and later earned his GED.  (Tr.36.)  Plaintiff had no past relevant work, as he had been incarcerated for 20 years of his adult life.  (Tr. 19, 36-37.)

B.  **Medical Evidence**[1]

1.  **Treating Providers**

On November 30, 2008, Plaintiff was examined by family physician Mary E. Massie-Story, M.D. (Tr. 234.) He reported that he had been released from Lake Erie Correctional Facility in July 2008, and that he had been taking Remeron to treat depression and required a refill. (*Id.*) Dr. Massie-Story diagnosed Plaintiff with depressive disorder. (Tr. 235.) On January 24, 2009, Plaintiff reported to Dr. Massie-Story that his depression was unchanged. (Tr. 232.) She noted that he had experienced anhedonia, weight loss, psychomotor agitation, fatigue, recurrent thoughts of death, suicidal ideation, feelings of hopelessness, impaired memory, despondency, despair, excessive guilt and depressed mood. (Tr. 232.) Dr. Massie-Story noted that Plaintiff was alert, with an appropriate and congruent affect. (Tr. 233.) She added Seroquel to his medication regimen. (*Id.*) On February 1, 2009, Plaintiff reported to Dr. Massie-Story that he felt that he was improving with medication, and that "talking about his problem[s]" with Dr. Massie-Story had "helped him tremendously." (Tr. 231.)

On December 3, 2009, Plaintiff underwent an initial psychiatric evaluation performed by psychiatrist Minnie M. Bowers, M.D. (Tr. 340-43.) He reported that he had been experiencing depression and suicidal ideations since June 2009. (Tr. 340.) A mental status examination revealed that Plaintiff's demeanor was mildly mistrustful

---

[1] The ALJ determined that Plaintiff had severe physical and mental impairments. (Tr. 13.) Plaintiff does not challenge the ALJ's conclusions regarding his physical impairments. (Plaintiff's Brief ("Pl. Br.") at 10.) Accordingly, this Memorandum Order and Opinion discusses only the medical evidence relevant to Plaintiff's mental impairments.

and preoccupied and severely withdrawn, that his speech was clear, and that his thought processes were logical. (Tr. 341.) He reported no delusions, hallucinations or aggressive intent. (*Id*.) Plaintiff's mood was moderately depressed and anxious, and his affect was labile. (Tr. 342.) Dr. Bowers noted that he had poor judgment. (*Id*.) She diagnosed Plaintiff with major depression and assigned him a Global Assessment of Functioning ("GAF") score of 50. (*Id*.) Dr. Bowers added Zoloft to his medications. (Tr. 343.)

On December 17, 2009, Dr. Bowers noted Plaintiff's blunted and constricted affect, and his paranoid thought content. (Tr. 339.) She opined that his thought process was concrete. (*Id*.) Plaintiff remained concerned about his depression. (Tr. 338.) Dr. Bowers directed Plaintiff to continue his medications, and assigned him a GAF of 55. (Tr. 339-40.) On February 15, 2010, Dr. Bowers noted that Plaintiff continued to have paranoid ideations and fears, but was stable on his medications and reported no sleep or appetite problems. (Tr. 337.) She assigned him a GAF score of 55. (*Id*.) On March 15, 2010, Dr. Bowers assigned Plaintiff a GAF score of 60, noting that he was "emotionally ok[ay]," although frustrated by some of his physical conditions. (Tr. 335.) On April 12, 2010, Dr. Bowers noted that Plaintiff was "stable" and had "no complaints." (Tr. 333.) She assigned him a GAF score of 65. (*Id*.)

On May 5, 2010, licensed marriage and family therapist Veda Cannon prepared a report reflecting that Plaintiff had been receiving counseling from her since January13, 2010. (Tr. 318-20.) She noted that Plaintiff "is diagnosed" with

4

schizoaffective disorder. (Tr. 318.)[2] Ms. Cannon reported that Plaintiff sought counseling to address depression, issues in his marriage, and anxiety resulting from an incident in which he had been shot and robbed near his home. (Tr. 319.) Ms. Cannon noted that Plaintiff was attending therapy and assigned him a GAF of 50 to 55. (Tr. 320.) On March 5, 2011, Ms. Cannon prepared a report that was nearly identical to her May 2010 report. (Tr. 391-93.)

### 2. Agency Assessments

On November 3, 2008, agency consulting psychologist Margaret Zerba, Ph.D., evaluated Plaintiff. (Tr. 198-201.) Dr. Zerba noted that Plaintiff's brother had driven him to the examination. (Tr. 198.) Plaintiff reported a history of childhood traumatic events, as well as two periods of incarceration totaling 20 years. (Tr. 198-99.) Dr. Zerva observed that Plaintiff had a depressed, flat affect, a "slow but organized" flow of conversation and thought, and fair to good insight and judgment. (Tr. 199, 200.) Dr. Zerba diagnosed Plaintiff with major depressive disorder and antisocial personality disorder. (Tr. 201.) She opined that Plaintiff's ability to relate to others in the work environment and to withstand stress and pressures of day to day work activity were "seriously impaired due to depression, flat affect, suicidal thoughts and personality issues." (*Id.*) Dr. Zerba assigned Plaintiff a GAF of 41, "due to depression, flat affect, suicidal thoughts . . . personality issues . . . recent release from prison with parole, no friends, no work history, dependent on mother, and no hobbies." (*Id.*)

On November 7, 2008, agency consulting psychologist Leslie Rudy, Ph.D.,

---

[2] No other medical records in the administrative transcript reflect a diagnosis of schizoaffective disorder.

5

performed a psychiatric review technique.  (Tr. 206-19.)  Dr. Rudy diagnosed Plaintiff with major depressive disorder and antisocial personality disorder, and concluded that Plaintiff had moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace.  (Tr. 209, 213, 216.)  In a Mental RFC performed on that date, Dr. Rudy opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions; to carry out detailed instructions; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting.  (Tr. 202-03.)  Dr. Rudy concluded that Plaintiff was markedly limited in his ability to interact appropriately with the general public.  (Tr. 203.)  Dr. Rudy noted that Plaintiff "may have some problems working around others and relating well to others due to being incarcerated for a long period of time," and  "may have some difficulty withstanding stress and pressure associated with day to day work activities," but opined that other evidence in the record was "not consistent" with the marked limitations assigned by Dr. Zerba in these areas.  (Tr. 205.)  Dr. Rudy opined that Plaintiff "would work best in a low stress environment with limited social interactions with others that does not require strict time or production demands."  (*Id.*)

On April 9, 2009, agency consulting psychologist affirmed Dr. Rudy's assessment of Plaintiff's mental RFC.  (Tr. 304.)

6

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

At his May 20, 2011 administrative hearing, Plaintiff testified as follows:

Plaintiff's "mental health disabilities" prevented him from working. (Tr. 37.) He was taking amitriptyline, sertraline and Zoloft to treat his depression, and he felt that the medications helped him by keeping him in a "calm mood." (Tr. 40.) He had problems concentrating on instructions and directions. (Tr. 40-41.) He did not get along well with others because of "schizophrenic problems and stuff like that." (Tr. 41.) Plaintiff became "really jittery around authority figures and stuff," which he attributed to "doing all them years of being incarcerated." (*Id.*) He was depressed four to five days out of the week, and mostly tried to stay by himself. (Tr. 42.) Plaintiff kept in contact with his pastor, and occasionally went shopping with his brother. (Tr. 44.) Plaintiff felt that his mental impairments interfered with his ability to work because he would have difficulty maintaining his focus. (Tr. 45.)

#### 2. Vocational Expert's Hearing Testimony

The ALJ described to the VE a hypothetical individual who was Plaintiff's age and had the same level of education and vocational training as Plaintiff, and who, in addition to physical limitations, was "limited to simple, routine, low-stress tasks, where there is . . . no more than superficial interaction with supervisors, coworkers, and the public, and where there is [no] requirement of arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others." (Tr. 47-48.) The VE opined that the hypothetical individual could perform work as a final assembler,

7

table worker, or bench hand. (Tr. 49-50.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his

past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff has not engaged in substantial gainful activity since September 8, 2008, the application date.

2. Plaintiff has the following severe impairments: the residual effects of gunshot wound to the right thigh with comminuted fracture of the right femur after surgical repair and a schizoaffective disorder.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with restrictions. He can stand and/or walk for 2 hours in an 8-hour workday; he can sit for 6 hours in an 8-hour workday. Plaintiff can lift, carry, push and pull a maximum of 10 pounds. He is precluded from using ladders, ropes and scaffolds. Plaintiff can occasionally use stairs and ramps. He is precluded from kneeling, crouching and crawling. Plaintiff is limited to simple, routine, low stress tasks where the is no more than superficial interaction with supervisors, co-workers and the public, and where there is no requirement for arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

5. Plaintiff has no past relevant work.

6. Plaintiff was born on December 30, 1962, and was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed.

7. Plaintiff has at least a high school education and is able to communicate in English.

* * *

9. Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Act, since September 8, 2008, the date the application was filed.

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

Plaintiff argues that the ALJ's determination of his RFC is not supported by substantial evidence in the record because the ALJ: (1) failed to account for Plaintiff's antisocial personality disorder; and (2) failed to adopt all of the limitations in Dr. Rudy's assessment, despite giving Dr. Rudy's opinion substantial weight.  The Commissioner argues that substantial evidence supports the ALJ's decision.  Plaintiff's arguments are not well taken.

### 1.  Antisocial Personality Disorder

Plaintiff argues that the ALJ erred in failing to include limitations in Plaintiff's RFC based on his diagnosis of antisocial personality disorder.  As a preliminary matter, the record reflects that the ALJ included mental limitations in Plaintiff's RFC.  (Tr. 15.)  Further, although Drs. Zerba and Rudy did diagnose Plaintiff with this mental impairment (Tr. 201, 213), it is well established that the "mere diagnosis" of a condition "says nothing" about its severity, or its effect on a claimant's ability to perform work, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Accordingly, the fact that physicians diagnosed Plaintiff with antisocial personality disorder did not, alone, require the ALJ to include limitations specifically related to that diagnosis.[3]

---

[3]  Similarly, Plaintiff argues that, because antisocial personality disorder is characterized in the *Diagnostic and Statistical Manual of Mental Disorders* as

To support his argument that the ALJ failed to include relevant limitations in his RFC, Plaintiff points to Dr. Zerba's evaluation, in which she opined that his mental conditions "seriously impaired" Plaintiff's ability to relate to others in a work environment and to withstand stress and pressures of day to day work activities. (Tr. 201.)  The ALJ assigned little weight to Dr. Zerba's opinion, noting that it was not supported by evidence in the record. (Tr. 16.)  Substantial evidence supports this conclusion, as neither Dr. Rudy nor Dr. Bowers – Plaintiff's treating physician – assigned Plaintiff the same marked limitations or opined that he was severely restricted in any way by his mental impairments.  Rather, Dr. Rudy specifically concluded that Dr. Zerba's opinion was not consistent with the other evidence in Plaintiff's file. (Tr. 204-05.)

Plaintiff asserts that the ALJ erred in relying on Dr. Bowers's opinion to afford little weight to Dr. Zerba's opinion because Dr. Bowers did not opine regarding Plaintiff's ability to work.  Although Dr. Bowers did not make conclusions regarding Plaintiff's limitations in specific areas, her treatment records support the ALJ's conclusion that Dr. Zerba's opinion lacks support in the record.  Dr. Bowers's examination records reflect that Plaintiff was improving with medication; that, in March 2010, he was "emotionally ok[ay];" and that, in April 2010, he was "stable" and had "no complaints."  (Tr. 332-35, 338.)  She also noted that Plainitff's behavior was "appropriate" throughout her treatment.  (Tr. 333, 335, 337, 338.)  Dr. Bowers noted no sign of aggression or

---

    including "a pervasive pattern of disregard for, and violation of, the rights of others that begins in childhood or early adolescence and continues into adulthood," the ALJ erred in failing to assign limitations based on Plaintiff's diagnosis of antisocial personality disorder.  (Pl. 12.)  This description, however, is more akin to a diagnosis, rather than a description of the disorder's effect on Plaintiff's ability to work.

agitation during Plaintiff's treatment. Although these observations do not strictly coincide with the areas addressed by Dr. Zerba, they do support the ALJ's conclusion that Dr. Zerba's opinion regarding Plaintiff's ability to handle stress and pressure and to relate to others was not supported by other evidence in the record. The ALJ properly relied on Dr. Bowers's opinion in formulating Plaintiff's RFC and in rejecting Dr. Zerba's conclusions. *See* S.S.R. 96-5p, Policy Interpretation, 1996 WL 374183 at *5 (S.S.A.) (explaining that the ALJ's assessment of a claimant's RFC is "based upon consideration of all relevant evidence in the case record").

Plaintiff similarly asserts that the ALJ erred in relying on Dr. Rudy's opinion regarding Plaintiff's limitations, noting that, in explaining his conclusion that Dr. Zerba's opinion was not consistent with the record, Dr. Rudy pointed to Plaintiff's ability to perform activities that did not involve interaction with others. While it is true that Dr. Rudy pointed to numerous activities that do not reflect on Plaintiff's social abilities, he also pointed to evidence that Plaintiff could – and did – interact with other people, such as relating to the physicians who examined him, spending time with others every day, using public transportation, living with his mother and uncle, and seeing his brother. (Tr. 204-05.) Accordingly, substantial evidence supports the ALJ's decision to rely on Dr. Rudy's opinion.

### 2.     The ALJ's Hypothetical to the VE

Plaintiff also argues that the ALJ's hypothetical to the VE did not accurately reflect Plaintiff's limitations. Plaintiff asserts that, although the ALJ accorded substantial weight to Dr. Rudy's opinion, he failed to include limitations in the hypothetical reflecting Dr. Rudy's opinion that Plaintiff would "work best in a low stress environment with

13

limited social interactions with others that does not require strict time or production demands." (Pl. Br. 13.) This argument fails to for two reasons. First, there is no requirement that an ALJ accept every facet of an opinion to which he assigns significant or substantial weight. Rather, the relevant regulations require only that an ALJ explain the general weight given to the opinions of non-examining physicians. *See* 20 C.F.R. § 404.1527(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency. . . psychological consultant . . . .").

Second, the ALJ included mental limitations in Plaintiff's RFC that reflect Dr. Rudy's opinion. The ALJ restricted Plaintiff to, *inter alia*, "low stress tasks where there is no more than superficial interaction with supervisors, co-workers and the public." (Tr. 15.) Although the ALJ did not adopt Dr. Rudy's exact phrasing, the limitations in Plaintiff's RFC address Dr. Rudy's concerns regarding Plaintiff's ability to perform work. *See Divins v. Astrue*, No. 3:11cv00033, 2012 WL 220246, *11 (S.D. Ohio Jan. 25, 2012) ("There is no requirement that the ALJ adopt the precise language offered by a medical source, as long as the ALJ's conclusion is supported by substantial evidence."). The ALJ's decision to limit Plaintiff to superficial interaction with his co-workers and supervisors addressed Dr. Rudy's opinion regarding Plaintiff's ability to interact with other people. Further, the ALJ's restriction of Plaintiff to low stress jobs contemplated Dr. Rudy's conclusion that Plaintiff was not capable of meeting strict time or production demands. *See, e.g., id.* ("Any difference between 'routine/predictable work' and 'unskilled, low stress work, defined as no assembly line production quotas, no fast-paced work' is . . . not material."); *Candela v. Astrue*, No. 1:10-CV-1603, 2011 WL

3205726, *11 (N.D. Ohio July 28, 2011) ("[T]he hypothetical of 'low stress simple repetitive type tasks with no frequent interaction with coworkers or the general public' takes into account [the claimant's] moderate limitations as to pace, by excluding fast-paced production position[s]."). Plaintiff fails to explain how the ALJ's limitation to "low stress" positions is materially different from Dr. Rudy's conclusion regarding Plaintiff's ability to meet time and production demands. Accordingly, this argument lacks merit.

### VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 28, 2012